**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MAYHEM CRUDE, INC.. | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-17-608 |
| | § | |
| SIVA VENTURES LIMITED, *et al.*, | § | |
| *Defendants*. | § | |

Consolidated with

| | | |
|---|---|---|
| DIABLO FORTUNE, INC.. | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-17-613 |
| | § | |
| SIVA VENTURES LIMITED, *et al.*, | § | |
| *Defendants*. | § | |

**MOTION TO VACATE MARITIME RULE B ATTACHMENT**
**AND REQUEST FOR EMERGENCY RELIEF**

Pursuant to Rule E(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"), and subject to its restricted appearance as owner of the JBU OPAL ("Vessel"), Opal Chemicals Limited ("Opal") respectfully requests this Court vacate the attachment of its Vessel obtained by Plaintiff Mayhem Crude, Inc. ("Mayhem"), pursuant to the *ex parte* order of attachment issued on February 27, 2017 (Doc. 7).[1]  Opal respectfully submits that the attachment was wrongful and should be vacated because:

---

[1] The order was issued in action H-17-608.  Plaintiff Diablo Fortune, Inc. ("Diablo") filed a similar but separate action, H-17-613, that has since been consolidated with this action by Court order. Doc. 11.  It does not appear from the PACER docket for H-17-613 that an order of attachment was issued in that case, but in an abundance of caution, to the extent it did, Opal respectfully submits that all of its arguments herein would apply equally to any such order.

- Opal is the undisputed owner of the Vessel, is an independent corporate entity, and is not the alter ego of any individual or entity;

- Mayhem has not asserted a direct claim against Opal and instead has alleged that Opal is liable to it as an alter ego of one or more of the other defendants named in its Complaint; and,

- Mayhem did not and cannot meet its *prima facie* burden under Rule B to establish that anyone other than Opal owned the Vessel and/or that Opal is an alter ego of any of the other defendants named in the Complaint.

Furthermore, Opal respectfully submits that Mayhem wrongfully and in bad faith obtained the *ex parte* order of attachment, and Opal therefore seeks to recoup all damages associated with the seizure, plus all costs and attorney fees associated with vacating same.

## BACKGROUND/PROCEDURAL HISTORY

On February 24, 2017, Mayhem initiated the present action as "an ancillary proceeding, brought in order to obtain jurisdiction over Defendants Daleworld [Daleworld Limited] and SVL [Siva Ventures Limited], and to obtain security for Plaintiff's claims in London arbitration proceedings," in connection with Mayhem's allegations that Daleworld and SVL defaulted on guarantees they provided in connection with a bareboat charter of Mayhem's vessel, the M/T V8 STEALTH.  The security Mayhem is pursuing is the Vessel, which no one disputes is owned by Opal, and which is the subject of the order attachment at issue in this motion.

Mayhem's Complaint named a total of eight defendants: Daleworld; SVL; Saravana Sivasankaran (an individual); Siva Ships International Pte. Limited; Siva Industries and Holdings Limited; Siva Shipping Singapore, Pte. Ltd.; and, Opal.  For the Court's convenience, attached hereto as Exhibit 1 is a diagram which attempts to visually depict (for ease of reference) Mayhem's disparate allegations/claims against the defendants.[2]   Most notably for purposes of

---

[2] Case H-17-613 concerns nearly identical allegations as herein, except they related to a charter party covering a separate vessel, the V8 STEALTH II, which is owned by Diablo.

the present motion, Mayhem's Complaint appears to contain no allegations that Opal is liable to

Mayhem in its own capacity.  Instead, Mayhem's sole purpose for including Opal in this case is

to allege that Opal is an alter ego of one or more of the other named defendants and, therefore,

Opal's property, i.e., the Vessel, is subject to attachment under Rule B.[3]

Plaintiff failed to provide the Court with any hard evidence whatsoever that might

support the alter ego allegations it makes against Opal in its Complaint.  Moreover, the baseless

nature of such allegations are fully highlighted by the accompanying declaration of (Holly) Yuen

Wai San,[4] who is a director of Opal, which establishes the following undisputed facts:

   a. Opal Chemicals Limited is the owner of the Vessel. See Exhibit 2, Wan
      declaration; and, Exhibit 3, Marshall Islands Certificate of Ownership and
      Encumbrance.  See also Exhibit 1 for ease of reference.

   b. Opal Chemicals Limited is a Marshall Islands entity and its registered address is
      Trust  Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall
      Islands MH9696. *Id*.

   c. Opal Chemicals Limited is a wholly owned subsidiary of Foreguard Shipping I
      Global Ships Ltd (formerly known as Siva Global Ships Ltd) ("Global Ships").
      See Exhibit 2; also see Exhibit 4, Marshall Islands Articles of Amendment and
      Certificate of Incorporation.

   d. Foreguard Shipping I Global Ships Ltd is a wholly owned subsidiary of Foreguard
      Shipping I Singapore Pte Ltd (formerly known as Siva Shipping Singapore Pte
      Limited) ("FSSPL"). See Exhibit 2.

   e. FSSPL is a wholly owned subsidiary of Foreguard Shipping I LLC ("Foreguard").
      See Exhibit 2.

   f. A transfer of ownership of FSSPL to Foreguard occurred on 14 November 2016
      following a Receivers sale. The Receivers were appointed on 31 August 2016
      following Standard  Chartered Bank enforcing a share pledge over FSSPL's

---

[3] There is no dispute that Opal is the owner of the Vessel.  However, while not included in its Complaint, Plaintiff
alleged in a subsequent motion filed with the Court that defendant Saravana Sivasankaran is actually the "beneficial
owner" of the Vessel. See Doc. 9.  Assuming *arguendo* that Plaintiff could rely on an unsworn motion to meet its
prima facie burden under Rule B, which is denied, Mayhem has nonetheless failed to provide any evidence
whatsoever supporting such allegation.  Moreover, the declaration of Ms. San affirmatively establishes that Mr.
Sivasankaran is not the beneficial owner of the Vessel.
[4] See San Affidavit, Exhibit 2.

holding company, Siva Group Shipping and Trading Projects Pte Ltd ("SGSTP"). See Exhibit 2.

g. Foreguard is an independent third party and paid valuable consideration for the purchase of the FSSPL shares from the Receivers. See Exhibit 2.

h. Foreguard, as ultimate beneficial owners of Opal Chemicals Limited, is in no way connected, related or in privity with any of the other named defendants including Siva Shipping Intl Pte Ltd, Siva Industries and Holdings Limited, Siva Ventures Limited, Daleworld Limited, Mr. Saravana Sivasankaran, or any relative or associate of Mr. Sivasankaran. See Exhibit 2.

i. Opal Chemicals Limited is a separate and independent corporate entity for all purposes including accounting, operations and corporate governance. See Exhibit 2.

j. Opal Chemicals Limited is not inadequately capitalized, and in fact owns a significant asset, i.e., the Vessel. See Exhibit 2.

k. The director of Opal Chemicals Limited observe all the formal legal requirements necessary for separate corporate existence. See Exhibit 2.

l. There is no commingling of funds between Opal Chemicals Limited and any other company. See Exhibit 2.

m. Siva Ships Intl Pte Limited, Daleworld Limited, Siva Ventures Limited, Siva Industries and Holdings Limited, and Saravana Sivasankaran or any relative or associate of Mr. Sivasankaran:

- are not employed by Opal Chemicals Limited, Global Ships or FSSPL;
- are not managers, directors, or officers of Opal Chemicals Limited, Global Ships or FSSPL
- do not have any ownership interest in Opal Chemicals Limited, Global Ships or FSSPL;
- do not share office space with Opal Chemicals Limited, Global Ships or FSSPL;
- do not have any involvement in the business operations of Opal Chemicals Limited, Global Ships or FSSPL;
- do not have any right to use any property owned by Opal Chemicals Limited, including the Vessel, Global Ships or FSSPL as their own;
- do not have any ownership interest in the Vessel; and,
- do not have any involvement in the operations of the Vessel.[5]

See Exhibit 2.

---

[5] For ease of reference, the corporate structure of Opal and its corporate parents are also included on Exhibit "A."

Plaintiff's Original Complaint was filed on Friday, February 24, 2017. The *ex parte* order of attachment was entered on February 27 and served on the Vessel shortly afterwards. On March 1, 2017, counsel for Opal sent a formal request to Plaintiff's counsel to release the Vessel. See Exhibit D, correspondence dated March 1, 2017. The Vessel remains detained at its berth in the Port of Houston. Therefore, Opal is filing the present motion to seek the Court's intervention to vacate the attachment and release the Vessel from detention so that it can resume its commercial sailing schedule/obligations, which have been and continue to be delayed by Plaintiff's action in this matter.

## ARGUMENT

### 1.   Opal Requests An Emergency Hearing on This Application

To ensure the constitutionality of the attachment mechanism provided by Rule B, Supplemental Admiralty Rule E(4)(f) provides any person whose property has been attached pursuant to Rule B an opportunity to appear before a district court to contest the attachment:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Supp. R. E(4)(f). This rule speaks in mandatory terms and is necessary to give a claimant its day in court after a Plaintiff such as Mayhem has been able to obtain *ex parte* relief, outside of the adversarial system with minimal oversight. The Advisory Committee to the Federal Rules has stated that at the Rule E(4)(f) hearing the interested party can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), Advisory Committee's note. Indeed, as was noted in *SLS Shipbuilding Co. Ltd, v. Ionia Management, SA*, 2011 WL 2652365, *3 (SDTX July 5, 2011), if

property is attached and garnished under **Rule B**, the property owner is "entitled to a prompt hearing at which the plaintiff [is] required to show why the arrest or attachment should not be vacated...." Supplemental Admiralty Rule E(4)(f).

It is paramount that this matter be heard as soon as possible.  If the Vessel (which is scheduled to complete cargo operations and depart Houston on **Thursday, March 2, 2017**) is not promptly released, it will cause Opal irreparable harm.  Accordingly, an immediate hearing is necessary to prevent further harm to Opal.  To that end, Opal may seek a claim against Mayhem for damages as a result of the wrongful attachment at issue.

    2.    <u>**Mayhem has Failed to Carry Its Burden to Show Why the Attachment Should be Maintained, and As a Result This Court Must Vacate the Attachment**</u>

Rules B and E of the Supplemental Admiralty Rules authorize a court to issue an order of maritime attachment if the plaintiff satisfies the rules' filing and service requirements and can show that (1) plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property can be found within the district; and (4) there is no statutory or maritime bar to the attachment.  *SLS Shipbuilding Co., Ltd. V. Ionin Mgmt., S.A.*,  2011 WL 2652365 (S.D.Tex. Jul. 5, 2011), see also *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd*, 460 F. 3d 434, 445 (2d Cir. 2006).  To that end, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli*, 460 F. 3d at 445, n. 5.  Accordingly, the burden is squarely on Mayhem to show that the attachment made under the Court's order was proper.

A motion to vacate a Rule B attachment is decided "based upon whether a *prima facie* claim is shown and the technical requirements for attachment have been met." *Indagro S.A. vs.*

*Bauche S.A*, 652 F. Supp. 2d 482, 485 (S.D.N.Y. 2009), citing *Chiquita Int'l Ltd. v. MV Bosse*, 518 F. Supp 2d 589, 597 (S.D.N.Y. 2007), citing *Aqua Stoli*, 460 F. 3d at 445.  For purposes of a Rule E(4)(f) post-arrest hearing, "[s]uperficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate." *Williamson v. Recovery, Ltd. Partnership,* 542 F.3d 43, 52 (2d Cir. 2008).  Rather, "the attaching party must present sufficient evidence to show probable cause for the attachment." *Diesel Specialists v. M/V Mohawk Transp., LLC.,* 2009 WL 1036085, * 4 (E.D.La. April 17, 2009) (Engelhardt, J.); see also *Naftomar Shipping and Trading Co. v. KMA Intern., S.A*., 2011 WL 888951, *7 (S.D.Tex. March 3, 2011) (Rainey, J.)("plaintiff bears the burden to establish probable cause for the arrest")(quoting *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al*., 1999 WL 311941, *1 (E.D.La. May 17, 1999) (internal citations omitted)).  Thus, a "district court may certainly vacate the [attachment] if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met." *Williamson*, 542 F.3d at 52.

Here, Mayhem cannot sustain its burden of proving that all of the prerequisites are met, as it has failed to allege *prima facie* evidence of an alter ego relationship (or indeed *any* relationship) between Siva Ships International PTE Limited and Opal Chemicals Limited.

### 3. <u>Mayhem Has Failed to Plead a *Prima Facie* Alter Ego Claim Against Opal</u>

In the present case, it is undisputed that Mayhem does not have a maritime claim *directly* against Opal, as Opal was not a signatory to the Charter Party between Mayhem and defendant Siva Ships International Pte Ltd.  Thus, whether Mayhem has shown a valid *prima facie* admiralty claim against Opal hinges exclusively on whether it has sufficiently alleged that Opal somehow acted as the "alter ego" of Siva Ships.  Mayhem has totally failed to do so.

Fifth Circuit courts permit the rare piercing the corporate veil of one company to get to the assets of its alter ego in the context of a maritime attachment proceeding in extreme instances "when one becomes the conduit of the other, or to prevent manifest injustice to third parties." *See A.Coker & Co., Ltd. v. Nat'l Shipping Agency Corp*., No. CIV.A.99-1440, 1999 WL 311941, at *1-2 (E.D. May 17, 1999) (citing *Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5ᵗʰ Cir.1981)). Under Fifth Circuit precedent, a trial court should pierce the corporate veil and require a parent corporation to answer for the debts of a subsidiary when the subsidiary conducts business in a manner that clearly indicates that the parent is an alter ego of the subsidiary. *Markow v. Alcock*, 356 F.2d 194, 197-98 (5th Cir. 1966). To find an alter ego relationship, the evidence must disclose a pattern of control or domination of a corporation by an individual or corporation, and that this domination was used to support a corporate fiction. *Bordagain Shipping*, 1979 A.M.C. at 1072

Critically, "[t]o state a *prima facie* claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; **conclusory allegations are insufficient**." *Naftomar*, 2011 WL 888951, at *14 (quoting *Emeraldian Ltd. Partnership v. Wellmix Shipping Ltd*., 2009 WL 3076094, at *3 (S.D.N.Y. Sept.28, 2009))(Emphasis added). As will be demonstrated below, all of Mayhem's alter ego claims are nothing more than conclusory assertions which summarize the corporate history of various Siva entities with a corresponding "leap of faith" assertion (at Mayhem Complaint Paragraph 51) that an alter ego relationship exists with Opal to do an alleged asset transfer to Opal's former parent company (Defendant Siva Shipping Singapore, Pte. Ltd.). There is no proof or evidence provided for such an assertion – let alone any additional evidence that Siva Shipping Singapore Pte. Ltd. went on to transfer anything whatsoever to Opal itself.  Accordingly, the attachment should be vacated.

A.      General Principles Surround Alter Ego and "Piercing the Corporate Veil"

To briefly summarize, "'alter ego' arises 'where a parent company or a principal shareholder totally dominates and controls its subsidiary, operating the subsidiary as its agent." *Jo Tankers v. HGB Logistics, L.L.C.*, 2013 WL 104827, *14 (S.D. Tex. Jan. 8, 2013), referring to *United States v. Jon–T Chemicals Inc*., 769 F.2d. 686, 691 (5th Cir.1985); see also *Gibraltar Savings v. L.D. Brinkman Corp*., 860 F.2d 1275, 1290 (5th Cir.1988), cert. denied, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).  Critically however, "[t]he alter ego doctrine and piercing of the corporate veil are truly exceptional doctrines, reserved for those cases where the officers, directors or stockholders utilized the corporate entity as a sham to perpetuate a fraud, to shun personal liability, or to encompass other truly unique situations." *Id*. at *14, citing *Subway Equip. Leasing Corp. v. Sims (Matter of Sims)*, 994 F.2d 210, 218 (5th Cir.1993).  In order to pierce the corporate veil under this exception to limited liability, Mayhem must prove both that (1) the separateness between the corporation and the shareholder or parent corporation has ceased to exist and, (2) upholding the separate corporate existence, would, under the circumstances, sanction fraud or promote injustice. *Id*., citing *Gibraltar Savings*, 860 F.2d at 1290.

Of course, a mere close relationship between two corporate entities is not in and of itself evidence of an "alter ego" relationship.  In fact, the total ownership of all the stock in a corporation or an exercise of the control that stock ownership gives to the shareholder does not mean that the corporation is the alter ego of its shareholder.  *Gibraltar Savings*, 860 F.2d at 1290 n. 19.  Likewise, a subsidiary does not become the alter ego of its parent merely because of a duplication of some or all of the directors or officers.  *Id.;* see also *Austral Asia PTE, Ltd. V. SE Shipping Lines Pte. Ltd.*, 2012 WL 2567149, *6 (E.D. La. Jul. 2, 2012)("some overlap of

ownership, officers, directors, and other personnel, is not unusual in [the shipping] industry"). Instead, the degree of control exercised must be greater than normally associated with common ownership and directorship to raise the question of whether the corporation is the alter ego of its owner. *Id.; Alpine View Co. Ltd. v. Atlas Copco., AB*, 205 F.3d 208, 219 (5th Cir. 2000). The significant control necessary to invoke the doctrine of alter ego is "such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal ." *Driving Force Technologies Inc. v. Pan da Inc*., 2012 WL 1645794, *10 (E.D. Tex May 10, 2012). In sum, veil piercing is a rare exception to the well-settled American principle of a presumption of separateness between corporate entities, and as such, Mayhem has a heavy burden of proof. See *Williams v. McAllister Bros., Inc*., 534 F. 2d 19, 22 (2d Cir. 1976).

Since each case must be judged on its own facts, no set formula has been created to decide when an alter ego relationship will be found. However, the Fifth Circuit has created a general "twelve factor" alter ego test set out in *Oxford Capital Corp. v. United States*, 211 F. 3d 280 (5th Cir. 2000) to evaluate such claims. These factors are **(1)** the parent and subsidiary's common stock ownership; **(2)** common directors or officers; **(3)** common business departments; **(4)** whether the parent and subsidiary file consolidated financial statements; **(5)** whether the parent finances the subsidiary; **(6)** whether the parent caused the incorporation of the subsidiary; **(7)** whether the subsidiary operated with grossly inadequate capital; **(8)** whether the parent pays the salaries and other expenses of the subsidiary; **(9)** whether the subsidiary receives no business except that given by the parent; **(10)** whether the parent uses the subsidiary's property as its own; **(11)** whether the daily operations of the two corporations are kept separate; and **(12)** whether the subsidiary does not observe corporate formalities. When applied to the facts of this case (as

opposed to Mayhem's unsupported conclusory assertions), the *Oxford Capital* factors actually demonstrate a **total isolation** between Siva Ships International Pte. Ltd (the entity that entered into the Charter party with Mayhem) and Opal, a separate and distinct juridical entity. Accordingly, Mayhem has failed to meet its *prima facie* burden, and the Rule B should be dismissed.

**B.   The *Oxford Capital* factors do not Demonstrate that an Alter Ego Relationship Existed Between Siva and Opal**

Mayhem goes to great lengths to obfuscate the relationships between the various Siva defendants in the hope of creating a "where there is smoke there is fire" argument to weakly support its *alter ego* claims against Opal. However, no fire exists. In essence, the entire support for Mayhem's alter ego argument boils down to the following vague paragraph (Complaint Para. 51):

> *The Guarantor Defendants, however, did not disclose to Plaintiff and intentionally concealed from it the fact that the assets of Siva Shipping AS, Oslo, which was formerly named J.B. Ugland Shipping AS, Oslo and was Plaintiff's original performance guarantor, were being or were about to be transferred under the corporate control of other corporate entities of the Siva Group, and specifically to Defendant Siva Shipping Singapore Pte. Ltd.*

Mayhem does not explain which entity initiated this allegedly fraudulent transfer, or how or why Siva Shipping Singapore Pte. Ltd (out of all of the *other* Siva entities) was specifically "singled out" for such transfer. Although Mayhem boldly claims that this improper asset transfer "is readily apparent" based upon a simple flowchart of Mayhem's own making, **no evidence whatsoever** has been provided to suggest that any asset transfer (fraudulent or otherwise) was initiated whereby monies were improperly transferred from any Siva Defendant specifically to Defendant Siva Shipping Singapore, Pte. Ltd. (the former corporate parent of Defendant Siva Global Ships Ltd., which itself was the direct corporate parent of Opal). Moreover, there is no

allegation whatsoever that Opal (a separate juridical entity) was itself in any way involved in this alleged interaction. In fact, based upon Mayhem's allegations, it must establish and prove via hard evidence that it can veil pierce through **four separate corporate forms** (i.e., first through Defendant Siva Ships International Pte. Ltd, the original charterer of the ship, then through Defendant Dalewood, the alleged guarantor of the charter, then through Defendant Siva Shipping Singapore, Pte. Ltd., the former corporate parent of Defendant Siva Global Ships Ltd., and then through Defendant Siva Global Ships Ltd., the direct corporate parent of Opal) before it can reach Opal itself. Mayhem has produced no evidence whatsoever that such an incredible veil-piercing of any entity (let alone all three) is warranted in this instance.

Putting aside Mayhem's paper-thin allegations, the true facts of Opal's corporate structure are now crystal clear. The declaration of Ms. San clearly establishes that Opal itself is a separate juridical entity which meets all aspects of 'separateness" for purposes of the Oxford Capital factors. See Exhibit B.  Under the circumstances, Mayhem's attempt to assert a poorly defined alter ego claim against Opal as a way to improperly target Opal's asset in this district (i.e., the Vessel) should be denied and the Vessel should be released.

## CONCLUSION

For the foregoing reasons, Opal respectfully requests that this Honorable Court vacate the attachment of Mayhem's vessel and dismiss Mayhem's Verified Complaint with prejudice. Opal, in turn, seeks all other equitable relief, including the right to obtain damages from Mayhem for its wrongful attachment of the vessel and refusal to promptly release the attachment when advised of the facts which abrogate the use of Rule B.

Respectfully submitted,

/s/ Michael K. Bell
Michael K. Bell
State Bar No. 02081200
Federal Bar No. 5084
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone:  (713) 228-6601
Facsimile:    (713) 228-6605
Email: mbell@blankrome.com
**_Attorney-in-charge for Opal Chemicals_**
**_Limited_**

**OF COUNSEL:**
Jeremy A. Herschaft
State Bar No. 24091970
Federal Bar No. 2450990
Email: Jherschaft@blankrome.com
David G. Meyer
State Bar No. 24052106
Federal Bar No. 732583
Email: dmeyer@blankrome.com
**BLANK ROME LLP**

## CERTIFICATE OF CONFERENCE

This is to certify that on the 1st day of March, 2017, I conferred with counsel for Plaintiffs regarding this Motion and confirmed that they are opposed.

/s/ Michael K. Bell
Michael K. Bell

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served pursuant to Federal Rule of Civil Procedure 5 on all counsel of record via the ECF system, facsimile and/or U.S. Mail, on this 1st day of March, 2017.

/s/ Michael K. Bell
Michael K. Bell