Case 4:17-cv-00608   Document 29   Filed in TXSD on 03/06/17   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
March 06, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAYHEM CRUDE, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION  H-17-608 |
| | § | |
| SIVA VENTURES LIMITED; | § | |
| DALEWORLD LIMITED; SIVA | § | |
| SHIPPING SINGAPORE PTE. LIMITED | § | |
| OPAL CHEMICALS LIMITED; SIVA | § | |
| INDUSTRIES AND HOLDINGS LIMITED | § | |
| AND SARAVANA SIVASANKARAN, | § | |

## ORDER VACATING SEIZURE

On February 24, 2017, Plaintiff filed this action representing by verified complaint that it was the owner of the Motor Tanker V8 STEALTH and that Siva Ships International Pte. Limited ("Siva Ships") was its charterer, as of 2011.[1]  In 2012, the performance of the bareboat charter was guaranteed by Daleworld Limited, and Daleworld Limited's performance was guaranteed by Siva Ventures Limited.[2]  Those entities were substituted for the original guarantors based on the representations of solvency by Martin Wong, a partner in KPMG International Cooperative and by Saravana Sivasankaran, the director of Siva Ships and son of the founder of a shipping conglomerate that included Siva Ventures Limited and Siva Industries and Holdings Ltd.[3]  Part of that solvency

---

[1]   See Doc. 1,  Orig. Verified Compl. p. 2.  The original charter party was J.B. Ugland Shipping Singapore Pte. Ltd. and the original guarantor was J.B. Ugland Shipping AS, Oslo.  Id. p. 4. In October 2011, J.B. Ugland Shipping AS, Oslo was renamed Siva Shipping Oslo AS.  Id.

[2]   Id. p. 2.

[3]   Id. pp. 4-5.

were vessels owned by subsidiaries of Siva Shipping Oslo AS.  Wong and Sivasankaran failed to disclose to Plaintiff that the assets of Siva Shipping Oslo AS and its subsidiaries, including Siva Ships and TACK Shipping S.A., the registered owner of the M/T JBU OPAL, would be transferred to Siva Shipping Singapore Pte. Ltd, and placed under the corporate control of the Siva Group.[4]  The effect of these corporate reorganizations was to strip assets from the guarantor entities, Daleworld and Siva Ventures Limited.[5]

One of the assets transferred from Siva Shipping Oslo AS to another Siva entity was the vessel under seizure, the M/T JBU Opal.   That vessel was originally owned by TACK Shipping, S.A., which in turn was owned by Siva Ships.[6]  The M/T JBU OPAL is currently owned by Opal Chemicals, Ltd.[7] Opal Chemicals, Ltd., had been indirectly owned by Siva Shipping Oslo AS, which was in turn owned by Daleworld.[8]  At some point after the new guarantors were in place, the ownership of Opal Chemicals, Ltd. was transferred to Siva Global Ships Limited, which in turn was owned by Siva Shipping Singapore Pte. Ltd.[9]

Later, control of Siva Ships was assumed by Standard Chartered Bank, when a loan secured by its shares was in default.[10]  The bank repudiated the charter party on December 18, 2016, and

---

[4]     Id. p. 14; see also Hearing Transcript ("Tr.") p. 8.

[5]     Id. p. 15.

[6]     Tr. 9.

[7]     Id. p. 12.

[8]     Id. p. 7.

[9]     Id. p. 11-12.

[10]    Id. pp. 7-8.  All subsidiary holdings of the defaulting party were placed in receivership.  Tr. 16.

refused to make necessary repairs to the vessel.[11]  The vessel was redelivered to Plaintiff in a damaged condition and Plaintiff turned to the charter party's guarantor for payment of damages.[12]  The guarantors - Daleworld and Siva Ventures Ltd., have failed to respond to Plaintiff's demands for payment and are insolvent.[13]  In its complaint, Plaintiff alleged that these two entities are dominated and controlled by Saravana Sivasankaran and his family, who have used their many corporations to perpetrate a fraud on itself and other creditors.[14]  Plaintiff sought Rule B attachment of the M/T JBU OPAL based on an alter ego and fraudulent transfer theory of control – that the Vessel's owner was Opal Chemicals Ltd. which was in turn owned by Siva Global Ships, which was owned by Siva Shipping Singapore Pte. Ltd.[15]

On February 27, 2017, the court arrested the M/T JBU OPAL.  On March 1, 2017, an opposed motion to vacate the seizure was filed by Opal Chemicals Ltd.  In its motion, Opal Chemicals Ltd. admitted that it is the owner of the M/T JBU OPAL but denied it was related to any of the other defendants named in the complaint.[16]  Opal Chemicals Ltd. averred that it was a wholly owned subsidiary of Foreguard Shipping I Global Ships Ltd., an entity formerly known as Siva Global Ships, Ltd., and that Foreguard Shipping I Global Ships Limited is a wholly owned subsidiary of Foreguard Shipping I Singapore Pte. Ltd., formerly known as Siva Shipping Singapore Pte.

---

[11]    Id. p. 8.

[12]    Id.

[13]    Id. p. 16.

[14]    Id.

[15]    Id. pp. 3, 14.

[16]    See Doc. 13, Opal Chemical's Mot. to Vacate, p. 3.

Limited.[17] Opal Chemicals Ltd. explained that the transfer of ownership occurred in November 2016 at a Receiver's sale that had foreclosed on assets of Siva Group Shipping and Trading Projects Pte. Ltd.[18] Opal Chemicals Ltd. averred that it was not related to any Siva entity, or Siva principal, and that no Siva entity or principal has an ownership interest in any Foreguard entity, including Opal Chemicals Ltd., or any ownership or managing interest in the M/T JBU OPAL.[19]

On March 2, 2017, the court continued the post-arrest hearing until Monday, March 6, 2017 to give Plaintiff additional time within which to address the new evidence concerning the ownership of Opal Chemicals Ltd.

On March 6, 2017, the post-arrest hearing was held before Magistrate Judge Johnson. The court has reviewed all pleadings filed in this action and has reviewed the transcript of the hearing. At the hearing, Plaintiff argued that it was not relying on an alter ego theory of ownership of the vessel but instead argued that the fraudulent transfer of the ownership and assets of Siva Shipping Oslo AS and its subsidiaries from the Daleworld/ Siva Ventures Ltd. branch of corporate ownership to the Siva Shipping Singapore Pte. Ltd./Opal Chemicals Ltd. branch of ownership, entitled it to seize the M/T JBU OPAL.[20] Plaintiff also argues that the sale of Opal Chemicals Ltd. to Foreguard Shipping I Global Ships Ltd. was a fraudulent transfer because it was negotiated by lawyers who were operating under a conflict of interest, it was unclear who was signing on behalf of the

---

[17]   Id.; see also Doc. 13-2, Decl. of (Holly) Yuen Wai San pp. 1-2.

[18]   Id. pp. 3-4; see also Doc. 13-2, Decl. of (Holly) Yuen Wai San p. 2.

[19]   See Doc. 13-2, Decl. of (Holly) Yuen Wai San p. 3.

[20]   See Tr. pp. 22-23.

Foreguard Shipping entity, and the contract did not have the look of a bona fide transaction.[21]

Under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule B"), Plaintiff may take jurisdiction over a defendant not subject to service of process within the district on an admiralty or maritime claim by attaching property of the defendant. See Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 421 (5th Cir. 2001)(citing Great Prize, S.A. v. Mariner Shipping Pty., Ltd., 967 F.2d 157, 159 (5th Cir. 1992)).

Plaintiff concedes that it has no direct admiralty claim against Opal Chemicals Ltd., as Opal Chemicals Ltd. was not a party to the charter party or the guarantees at issue. Plaintiff does not argue that Opal Chemicals Ltd. is the alter ego of either the charterer or a guarantor of the charter party. Instead, Plaintiff relies on a fraudulent transfer theory of liability found in Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684 (1950) and Flame S.A. v. Freight Bulk Pte. Ltd., 807 F.3d 573 (4th Cir. 2015).

In Swift & Co., cargo was lost when the M/V CALI was sunk off the coast of Grand Cayman island. 339 U.S. at 685. The owner of the M/V CALI transferred ownership of another vessel to a new company formed four days before suit was filed over cargo lost with the M/V CALI. Id. at 686. The cargo owners attempted to attach the M/V CARIBE on the grounds that its transfer to another company was fraudulent, and that the successor-owner of the M/V CARIBE was the alter ego of the original vessel owner. Id. at 686. The Court found that the attachment based on the allegation of a fraudulent transfer was permissible. Id. at 694-95. The Court stated, "The basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies

---

[21] See Tr. pp. 20-21, 24-25.

equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim." Id.

In Flame S.A., the Fourth Circuit approved the Rule B attachment of a vessel owned by the alter ego of the debtor company. Flame S.A., 807 F.3d at 578. There, the plaintiff was able to show that the owner of the vessel was responsible for the other company's debts and that there were fraudulent transfers of funds and assets to evade creditors. Id.

In the present set of facts fraudulent transfer is not so clear as in the cases cited above. Here, the owner of the vessel, Opal Chemicals Ltd., and its parent companies, have no relation to the charterer or guarantors of the charter party. While the M/T JBU OPAL at one time may have been transferred among Siva entities for less than adequate consideration or to defraud creditors, there is no evidence to suggest that the sale of the vessel to the Foreguard entities was a fraudulent transfer to avoid the obligations under the charter party or the related guarantees.

Accordingly, the court **VACATES** the seizure order and **ORDERS** that the Motor Tanker **JBU OPAL, IMO 9400409, International Call Sign V7IN4** be released from in rem seizure.

Plaintiff's requests for discovery and a stay of this order are **DENIED.**

**Signed** at Houston, Texas on March 6, 2017.

_____
Gray H. Miller
United States District Judge